AO 91 (Rev.11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  6:16-mj- 1660 |
| CLARENCE BROWN II | ) | |
| | ) | |
| Defendant | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates of November 14, 2016 - December 6, 2016, in the county of Orange in the Middle District of Florida, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A | Receiving and possessing child pornography in or affecting interstate or foreign commerce or that had been transported in interstate or foreign commerce. |

This criminal complaint is based on these facts:

See attached Affidavit

☒ Continued on the attached sheet.

_____
Complainant's signature

J. Steven McElyea, Special Agent
_____
Printed name and title

Sworn to before me and signed in my presence.

Date: 12-6-2016

_____
Judge's signature

City and state:   Orlando, Florida       THOMAS B. SMITH, U.S. Magistrate Judge

STATE OF FLORIDA                           CASE NO. 6:16-mj- 1660

COUNTY OF ORANGE

## AFFIDAVIT

I, J. Steven McElyea, being duly sworn, do hereby depose and state as follows:

1. I am currently in my 23rd year of employment with the Seminole County Sheriff's Office where, since July 2005, I have been assigned as a task force agent with the Federal Bureau of Investigation (FBI) Innocent Images Unit in Orlando, Florida. I have been investigating crimes against children from November 1999 to the present.

2. The statements contained in this affidavit are based on my experience and background as a law enforcement officer, including my experience with the FBI.

3. I have received specialized training in the investigation of sex crimes, child exploitation, child pornography, and computer crimes. I have participated in the investigation and prosecution of persons suspected of violating federal child pornography laws, including 18 U.S.C. § 2252A. I have also been involved in investigations involving the online solicitation and enticement of minors to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2422(b).

4. I have also participated in various training courses for the investigation and enforcement of federal child pornography laws in which computers are used as the means for receiving, transmitting, and storing child pornography. Additionally, I have participated in the execution of search warrants involving searches and seizures of computers, computer equipment, software, and electronically stored information.

5. This affidavit is submitted in support of a criminal complaint against CLARENCE BROWN II for violations of 18 U.S.C. § 2252A. As set forth in more detail below, I believe there is probable cause that on or about November 14, 2016 through December 6, 2016, in Orange County, Florida, CLARENCE BROWN II knowingly downloaded, received, and possessed child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(a)(5)(B).

6. I make this affidavit from personal knowledge based on my participation in this investigation, information from other criminal investigators, information from other law enforcement officers, information from agency reports, and our review of documents provided to me by these witnesses and law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a criminal complaint, I have not set forth each and every fact learned during the course of this investigation.

## STATUTORY AUTHORITY

7. Title 18, United States Code, Section 2252A, prohibits a person from knowingly receiving, distributing, or possessing any child pornography, as defined in 18 U.S.C. § 2256(8), while using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce.

2

## PEER-TO-PEER (P2P) FILE SHARING

8.  A growing phenomenon on the Internet is peer-to-peer file sharing (hereinafter "P2P"). P2P file sharing is a method of communication available to Internet users through the use of special software. The software is designed to allow users to trade digital files over the Internet through a worldwide network that is formed by linking computers together. There are several different software applications that can be used to access these networks but these applications operate in essentially the same manner.

9.  To access the P2P networks, a user first obtains the P2P software, which can be downloaded from the Internet. This software is used exclusively for the purpose of sharing digital files. When the P2P software is installed on a computer, the user is directed to specify a "shared" folder. All files placed in that user's "shared" folder are available to anyone on the worldwide network for download. Most P2P software gives each user a rating based on the number of files he/she is contributing to the network. This rating affects the user's ability to download files. The more files a user is sharing, the greater his or her ability is to download files. This rating system is intended to encourage users to "share" their files, thus propagating the P2P network. However, a user is not required to share files to use the P2P network.

10. A user obtains files by conducting keyword searches of the P2P network. When a user initially logs onto the P2P network, a list of the files that the user is sharing is transmitted to the network. The P2P software then matches files in these file lists to keyword search requests from other users. A user looking to download files

3

simply conducts a keyword search. The results of the keyword search are displayed and the user then selects file(s) that he or she wants to download. The download of a file is achieved through a direct connection between the computer requesting the file and the computer(s) hosting the file. Once a file has been downloaded, it is stored in an area of the computer that was previously designated by the user and will remain there until moved or deleted. Most P2P software applications keep logs of each download event. Using these logs, a forensic examiner can often determine the Internet Protocol (IP) address from which a particular file was obtained.

11. A person interested in sharing child pornography with others in the P2P network need only place those files in his or her "shared" folder(s). Those child pornography files are then available to all users of the P2P network for download, regardless of the other users' physical location.

12. A person interested in obtaining child pornography can open the P2P application on his or her computer and conduct a keyword search for files using a term such as "preteen sex." The keyword search would return results of files being shared on the P2P network that match the term "preteen sex." The user can then select files from the search results and download those files directly from the computer(s) sharing those files.

13. Because the computers that link together to form the P2P network are located throughout the world, the P2P network operates in interstate and foreign commerce. A person who knowingly includes child pornography files in his or her "shared" folder is hosting child pornography and therefore is possessing and

potentially distributing, transporting, or shipping child pornography, in violation of 18 U.S.C. § 2252A.

14. One of the advantages of P2P file sharing is that multiple files may be downloaded in parallel. This means that the user can download more than one file at a time. In addition, a user may download parts of one file from more than one source computer at a time. For example, a user downloading an image file may actually receive parts of the image from multiple computers. This reduces the time it takes to download the file. A P2P file transfer is assisted by reference to an IP address. This address, expressed as four numbers separated by decimal points, is unique to a particular Internet connection during an online session. The IP address provides a unique location that makes it possible for data to be transferred between computers.

15. Even though the P2P network links together computers all over the world and users can use it to download files, it is not possible for one user to send or upload a file to another user of the P2P network. The software is designed to allow only the download of files that have been selected. One does not have the ability to send files from his or her computer to another user's computer without the other user's permission or knowledge. Therefore, it is not possible for one user to send or upload child pornography files to another user's computer without the latter's active participation.

16. The Ares network is an open source, public, P2P file-sharing network. Most computers that are part of this network are referred to as nodes. A node can simultaneously provide files to some peers while downloading files from other nodes.

5

Nodes may be elevated to temporary indexing servers referred to as "supernodes." Supernodes increase the efficiency of the Ares network by maintaining an index of the contents of network peers. Ares users query supernodes for files and are directed to one or more peers sharing that file. There are many supernodes on the network, so even if one shuts down, the network continues to operate.

17. The Ares network can be accessed by computers running many different client programs, including the original Ares Galaxy program, and derivatives compiled from the source code, which is open source and freely available. These programs share common protocols for network access and file sharing. The user interface, features, and configuration may vary between clients and versions of the same client.

18. During the installation of an Ares client, various settings are established which configure the host computer to share files. Depending upon the Ares client used, a user may have the ability to reconfigure some of those settings during installation or after the installation has been completed. Typically, a setting establishes the location of one or more directories or folders whose contents (files) are made available to other Ares users to download. This location is commonly known as the "my shared folder" and in many versions is defaulted to be on the computer's desktop.

19. The client software processes files located in a user's shared directory. As part of this processing, a SHA-1 hash value is completed for each file in the shared directory.

20.   The Ares network uses SHA-1 values to improve network efficiency. Users may download a selected file from numerous sources by accepting segments of the file from multiple users and then reassembling the complete file on the local computer. The client program succeeds in reassembling the file from different sources only if all the segments came from exact copies of the same file. The network uses SHA-1 values to ensure that exact copies of the same file are used during this process.

21.   Upon connecting to the Ares network, a list of shared files, descriptive information and the files' associated SHA-1 values are sent to supernodes. This allows other users to locate these files. This frequency of updating information is dependent upon the client software being used and the Ares networking protocols. This information sent to the supernodes is data about the file—not the actual file itself. The file remains on the user's computer. In this capacity, the supernode acts as a pointer to the files located on a user's computer.

22.   When a download of a file is initiated, the user is presented with a list of users (nodes) who had told the Ares network that they have the requested file available for others to download. Typically, the supernodes and host computers on the network return this list containing node information and the IP addresses of computers that have reported that they have available for others to download the same file (based on SHA-1 comparison), or in some instances portions of the same file. This procedure allows for the detection and investigation of computers involved in sharing digital files of known actual child pornography.

23. Obtaining files from the Ares network, as described herein, returns the candidate list (which includes IP addresses), which can be used to identify the location of computers providing files for download. Although the IP address is not usually visible to the end user in the common Ares clients, it is returned and used by the software to initiate the download.

24. Law enforcement has modified the Ares program to allow the downloading of a file from a single IP address, and to display the IP addresses.

## PROBABLE CAUSE STATEMENT

25. On November 15, 2016, I used a computer connected to the Internet and the P2P program RoundUp Ares to conduct an undercover online session to identify individuals sharing child pornography.

26. Through my investigation, I was able to locate a computer with IP address 71.2.142.45, which was sharing files of suspected child pornography.

27. I also identified IP address 71.2.142.45 as a download candidate for suspected child pornography based on records contained within a law enforcement database. The database compiles suspected IP addresses based upon the suspect's network searches on Ares using particular keywords or SHA-1 values. This IP address was identified as a download candidate for at least 20 files of investigative interest.

28. On November 15, 2016, a Domain Name System check was performed on IP address 71.2.142.45 through the American Registry for Internet Numbers. RoundUp Ares received information that the IP address is registered to Embarq Corporation (CenturyLink).

29. From November 15, 2016, at approximately 2:09 a.m., EST (Eastern Standard Time) through November 25, 2016, at approximately 5:14 p.m., EST, Ares successfully completed the download of nine full video files that the computer at IP address 71.2.142.45 was making available to other users.

30. Based on my training and experience, I have determined that the following video files depict children under the age of 18 years engaged in sexually explicit conduct, and constitute child pornography as defined in 18 U.S.C. § 2256.

| Downloaded File | Download Date/Time | Contributing IP Address | Description |
| --- | --- | --- | --- |
| ptsc kinderficker hussyfan pthc i cum my step doughter jenniefer sofie ver mouth (search jenniefer sofie)(2).avi | 11/15/2016 at 2:09 a.m., EST, to 11/25/2016 at 5:14 p.m., EST | 71.2.142.45 | A movie file depicting an adult male inserting his penis into mouth of a female toddler who is approximately 2 years old. |
| !!!cop10 15 [pthc] indian black beauty 10y (e4).mpg | 11/15/2016 at 2:09 a.m., EST, to 11/25/2016 at 5:14 p.m., EST | 71.2.142.45 | A movie file depicting a prepubescent girl who is approximately 8 to 10 years of age inserting a phallic device into her own vagina, and is forced to perform oral and vaginal sex with an adult male. |
| "NO FIL NAME" Hash value - GQ3RP5EAULK ADNL2IGM7IZB OLSOWMK62 | 11/15/2016 at 2:09 a.m., EST, to 11/25/2016 at 5:14 p.m., EST | 71.2.142.45 | A movie file depicting a prepubescent girl who is approximately 7 to 9 years of age, exposing her genitalia and inserting a pen into her vagina. |

31. During the investigation, I obtained subscriber information for the user assigned to IP address 71.2.142.45 from November 15, 2016, at approximately 2:09 a.m., EST (Eastern Standard Time) through November 25, 2016, at approximately 5:14 p.m., EST. Subscriber records yielded the following information:

| | |
|---|---|
| Billing Name: | CLARENCE BROWN |
| Billing Address: | 2198 Meadow Court, Apopka, Florida 32703 (hereafter, the "Residence") |
| Established date: | 11/14/2016 |
| Product ID: | 407-814-8945 |
| Service Address: | 2198 Meadow Court, Apopka, Florida 32703 (i.e. the Residence) |

32. On November 28, 2016, a Black Ford Escape bearing Georgia tag "PYA2824" was observed parked in the driveway at the Residence. A search through a law enforcement database of Georgia tag "PYA2824" revealed that the vehicle was registered to a CLARENCE LEONARDY BROWN II, of Augusta, Georgia.

33. A search of the Residence address and the last name of BROWN through a law enforcement database revealed that a CLARENCE LEONARDY BROWN II is associated with the Residence.

34. On November 28, 2016, I queried IP address 71.2.142.45 and found that as of November 25, 2016, the Ares user had 80 unique files, and most of the file names were indicative of child pornography.

35. On November 29, 2016, an Internet search of the Residence address through the Orange County Property Appraisers website indicated that on November 8, 2016, a CLARENCE BROWN purchased the Residence.

36. On December 6, 2016, contact was made with CLARENCE BROWN II at the Residence—where CLARENCE BROWN II lives—during the execution of a search warrant. CLARENCE BROWN II was advised that he was not under arrest and was under no obligation to speak interviewing agents. CLARENCE BROWN II stated that he had been downloading and viewing child pornography for approximately four years. CLARENCE BROWN II said that he views child pornography two to three times a week and sometimes masturbates to the child pornography. CLARENCE BROWN II used his Toshiba laptop to download child pornography using the P2P program Ares. CLARENCE BROWN II stated that he only enjoys viewing child pornography with girls in the videos.

37. CLARENCE BROWN II first saw child pornography approximately four years ago and became curious. CLARENCE BROWN II uses the search term "PTHC" when searching for child pornography to download on Ares. He estimated that he had approximately 40 videos of child pornography on his Toshiba laptop and approximately 40 videos of child pornography on a Toshiba external hard drive. CLARENCE BROWN II said he knew it was illegal to download and view child pornography and at one point said he didn't think he had a problem. CLARENCE BROWN II last viewed child pornography approximately four days ago.

38. A forensic preview of CLARENCE BROWN II's Toshiba laptop shows over 200 video files with titles indicative of child pornography located in the Ares download folder. The creation dates of those video files span from June 10, 2016 to November 24, 2016. Sixty-eight of those videos were created from November 14, 2016 to November 24, 2016. Accordingly, there is probable cause to believe that CLARENCE BROWN II downloaded and received the latter videos of child pornography in the Middle District of Florida.

39. Your affiant has viewed at least three of the video files from the forensic preview and based on my training and experience, I have determined that the following video files depict children under the age of 18 years engaged in sexually explicit conduct, and constitute child pornography as defined in 18 U.S.C. § 2256(8). Below is a description of three of the videos viewed by your affiant.

| DOWNLOADED FILES | CREATION DATE | DESCRIPTION |
|---|---|---|
| !10yr mandy all.avi | 11/17/2016 | A movie file depicting a prepubescent girl who is approximately 8 to 10 years of age and crying while performing oral sex on an adult male. |
| (pthc) johanna 9 yr swallows cum slct.avi | 11/18/2016 | A movie file depicting a prepubescent girl who is approximately 8 to 10 years of age performing oral sex on an adult male. |
| vichatter 9 yr.avi | 11/19/2016 | A movie file depicting a prepubescent girl who is approximately 8 to 10 years of age who undresses, exposes her anus, genitalia, digitally penetrates her vagina, and urinates in a glass. |

## CONCLUSION

Based on the above, there is probable cause that between in or about November 14, 2016 through December 6, 2016, in Orange County, in the Middle District of Florida, CLARENCE BROWN II, knowingly received and possessed child pornography, all in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(a)(5)(B).

_____
Steven J. McElyea
Task Force Officer
Federal Bureau of Investigation

Sworn to and subscribed before me
this 6th day of December, 2016.

_____
THOMAS B. SMITH
United States Magistrate Judge